IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| E.G. by his parent and Next Friend ASHLEY GERALD | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| SPRINGFIELD R-XII SCHOOL DISTRICT | ) ) ) ) |
| Defendants. | ) |

Case No. 24-cv-03322

## **COMPLAINT**

Plaintiff E.G. (Student), by his parent and next friend, Ashley Gerald (Mother or Parent), seeks reversal of a special education decision of the Missouri Administrative Hearing Commission following a due process hearing, pursuant to 20 U.S.C. § 1415(i)(2)(A).

## **PRELIMINARY STATEMENT**

1. This case illustrates the significant hurdles a parent faces to get basic data, information, and appropriate services for their disabled child in the largest school district in the state of Missouri. Ms. Gerald (Parent) was treated as the problem when she sought information and services the Springfield R-12 School District (Springfield/District) is required by law to

provide her disabled son, a ten-year-old in a public school district.

2. The problems started immediately upon E.G.'s transfer from the Republic School District into the Springfield R-12 School District. A transfer IEP was implemented without consultation with Parent or a team meeting.

3. The implementation was lacking from the beginning. A review of the minimal data collected in the first month led the District to acknowledge it was sparse, inconsistent, and inappropriate for E.G.'s goals. Springfield agreed to provide compensatory minutes for all services E.G. was due and owed from Fremont Elementary School.

4. Due to various problems at Fremont Elementary School, Parent sought and was granted a transfer to Hickory Hills Elementary, also with the Springfield R-12 School District.

5. While the District debated how to allocate th compensatory minutes due and owing from Fremont Elementary, Ms. Gerald realized E.G. was being shorted half of all his reading and writing minutes at Hickory Hills elementary.

6. As a result of this second violation of E.G.'s right to a Free and Appropriate Public Education (FAPE), Springfield agreed to provide more compensatory minutes to be serviced at the Springfield Dyslexia Center. However, receipt of those minutes was contingent on accepting a poorly crafted IEP.

7. Ms. Gerald could not consent to the IEP for a variety of valid reasons. The IEP lacked accurate present levels of performance and included dated and inaccurate data about her child. The District's proposed goals were not matched to his needs. The proposed reading program was being offered at less than forty percent of the minutes required for fidelity due to District scheduling issues. Additionally, E.G. would be pulled from core math instruction, an emerging area of concern. E.G.'s written expression services, likely E.G.'s greatest area of need, were being reduced. Most of the goals included baselines of zero, which posed a host of problems. The benchmarks for mastery were well below expectations for other students and below his current functioning.

8. Ms. Gerald's questions were ignored. Her requests that the District comply with state and District policies and laws were rebuffed. Her pleas for information were often met with delays and at times deceit. District staff destroyed or altered records before she could review them.

9. Springfield predetermined to utilize Take Flight with E.G. Ms. Gerald did not oppose to have this program implemented, but she wanted answers to basic questions about the goals and service minutes, answers that the team refused to meaningfully address. The Take Flight instructor failed to review E.G.'s file or participate in meetings to answer questions on the goal. The District predetermined that E.G. would be offered Take Flight only two

days per week for forty-five minutes despite knowing that the fidelity requirements were substantially higher. Ms. Gerald's requests for an additional session were rebuffed, and the District failed to send her a Prior Written Notice (PWN) documenting the reason for its refusal.

10. E.G.'s special education teacher was provided absolutely no curriculum to teach him to read, write, or spell absent a dated set of laminated flashcards unrelated to E.G.'s goals or needs. E.G.'s time in her room was spent working to finish packets from his general education classroom rather than receiving specialized direct explicit instruction on his goals.

11. In fact, specialized instruction would have been extremely difficult for Ms. Rowland, the only certified teacher in the room, to implement considering that she not only lacked any specialized curriculum but also was simultaneously in charge of meeting the needs of E.G. and up to 12 other children with a variety of disabilities, including Down's syndrome, nonverbal autism, and behavior disorders. Her room also included children of differing grade levels who also had learning disabilities. Her room was a constantly changing melting pot for such a wide array of needs, and her ability to target her instruction to any child's goals and needs in the room was significantly compromised.

12. Even when Ms. Rowland did work with E.G., she admitted her

methods were pieced together from below-grade-level work. Ms. Rowland took little to no meaningful data on the goals from E.G.'s transfer IEP, and she acknowledged she was not even aware she was supposed to service those goals until after the Due Process was filed. His Speech Language Pathologist (SLP) also lacked supervision and instruction on her duties, which resulted in her taking data on the wrong goals for over a month.

13. E.G. has not received specialized instruction based on his unique needs the entire time he has attended the Springfield School District. He was also not provided the Extended School Year (ESY) services the IEP team acknowledged he needed as attendance was made conditional on Ms. Gerald waiving her right to a hearing on the numerous violations that she and her son encountered at Fremont Elementary. Hence, the only specialized instruction E.G. has received since entering the District in January of 2024 is what his parent could afford to purchase for him through the Springfield Dyslexia Center (Dyslexia Center).

14. Parent seeks all compensatory minutes the District admitted were due and owing but unreasonably withheld totaling 3,420 minutes. Parent asks that all ESY minutes that E.G. was entitled to in June of 2024 be converted to immediate use at the Springfield Dyslexia Center, totaling an additional 1,480 minutes. Parent seeks compensatory minutes for all of the time that E.G. was placed into Ms. Rowland's classroom to receive reading

and writing minutes even though she lacked any curriculum in phonemic awareness, phonics, basic reading, reading fluency, reading comprehension, written expression, or spelling. She also lacked the ability to service his minutes with direct, explicit instruction while managing a cross-categorical classroom with a tremendously wide range of needs as the sole certified teacher.

15. Parent seeks compensatory minutes for the language services from April 11, 2024 to May 1, 2024 while his SLP worked on goals not agreed upon and ignored the goals in his active transfer IEP. Parent seeks the additional 40 minutes per week of services the IEP team acknowledged he needed in the April 11, 2024, IEP but that have never been provided. Parent requests an order that the District conduct an Occupational Therapy evaluation on E.G., as both his general education teacher and his special education teacher noted he continues to consistently reverse letters throughout fourth grade, well past when that is developmentally appropriate. Finally, Parent requests that the District be ordered to reconvene an IEP meeting with all mandatory participants and provide sufficient data to set appropriate goals in all areas of need at least 48 hours before the meeting.

16. In order to meaningfully service the goals, Ms. Rowland and every special education teacher in the District working with E.G. should have access to appropriate curriculum, training, time, and other resources so that

they can provide the specialized instruction all special education students are entitled to under the law. E.G. should be provided his instruction with fidelity in a small group of similarly situated students in an environment that allows the students to get the undivided expertise and direct instruction from a certified special education teacher the law contemplates.

17. Respondent's actions deprived E.G. of a FAPE. The services E.G. received while on the transfer IEP and the services proposed in the April 11, 2024, IEP did not confer more than a *de minimus* educational benefit to E.G., and it was only when he enrolled in private tutoring at the Center that he began to progress.

## PARTIES

18. Plaintiff E.G. is an eleven-year-old student enrolled for public schooling in the Springfield R-XII School District (District).

19. Plaintiff Ashley Gerald is a resident of Springfield, Missouri, a custodial parent to E.G., and an active participant in E.G.'s education and rearing.

20. Defendant Springfield R-XII School District provides E.G. general and special education and is a public school district. Defendant's principal place of business is in Springfield, Missouri, and it is subject to Federal and state law and regulations, including by the U.S. Department of Education.

## JURISDICTION AND VENUE

21. This Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) of the Individual with Disabilities Education Act (IDEA) and 28 U.S.C. § 1331.

22. Venue is proper within this Court and Division because the acts complained of occurred in Springfield, Missouri.

## **STATEMENT OF FACTS**

23. Plaintiff incorporates and realleges all the foregoing paragraphs in this Statement of Facts, in addition to the following details.

24. On January 24, 2024, E.G. enrolled within the District and his first day of school within the District was on January 29, 2024.

25. E.G. had an IEP at his former school. Defendant received all the information from E.G.'s former school on his special education requirements and services on January 30, 2024.

26. Between January 29, 2024 and February 28, 2024, Parent communicated by phone, in person, and by email with Defendant requesting information including:

   a. the transfer E.G.'s IEP

   b. details of District's Comparable Services Plan for E.G.,

   c. information on District dyslexia remediation curriculum,

   d. draft IEP for the March 4, 2024 IEP meeting,

   e. data on goals, work samples, explanations of data.

27. On February 20, 2024, Parent emailed Sarah Tuttle, Special

Education Teacher and Case Manager for Defendant, and Rhonda McReynolds, Process Coordinator for Defendant, requesting work samples, data taken on goals, and explanations of some data.

28. On March 4, 2024, a scheduled Review/Revise IEP meeting for E.G. was canceled by Parent because Ms. McReynolds failed to provide access to E.G.'s educational records prior to the meeting, leaving Parent unprepared.

29. After the canceled meeting, District compiled and provided some elements of the requested educational record. District also rescheduled the Review/Revise IEP meeting for March 20, 2024.

30. On March 20, 2024, IEP Team including Parent, except for the Speech Language Pathologist who was out for an extended time, convened to create the IEP for E.G. No IEP was created.

31. Between March 19 and March 27, 2024, the parties discussed Parent's concerns regarding District's ability to provide free and appropriate education (FAPE) for E.G.

32. On April 3 2024, Dr. David Whitson, who was District's decision maker, and other district staff, met with Parent to discuss whether the district provided E.G. with FAPE during enrollment at Fremont. In the meeting, Dr. Whitson admitted that the District had not provided FAPE because Sarah Tuttle had destroyed work samples, did not take data aligning

to the transfer goals, and reported scores on the data reporting sheet that did not align with scores on the corresponding work samples. The District also admitted that no data existed to show language services were provided and made an offer of compensatory services.

33. Dr. Whitson edited the progress monitoring report in the SPEDTRACK progress monitoring platform to state that all special education data collected previously was unusable due to inconsistencies and inaccuracies.

34. During the April 3, 2024 meeting, Lori Luthy, Assistant Director of Special Education, informed Parent of plans to offer basic reading services utilizing take flight for 45 minutes two days a week.

35. On April 4, 2024 the IEP Team again met with Parent to create an IEP for E.G. During the meeting. several components of the individual education program were discussed, but the IEP was not finalized.

36. On April 11, 2024, another IEP meeting was held. During this meeting, goals were discussed, but SMART goals were not crafted to meet all areas of need. Parent asserted concerns with drafted basic reading goal and attempted to discuss this goal, however the District would not discuss the basic reading goal during that meeting because not all required participants were in attendance.

37. Parent requested several services and accommodations that were

denied. These include, but are not limited to, additional basic reading services and a second set of textbooks. The meeting was tabled before agreement could be reached on the necessary services and accommodations to be provided to E.G.

38. On April 12, 2024 the District sent a new draft IEP and subsequent Prior Written Notice indicating the IEP would be implemented in 10 days or earlier upon signature.

39. Between April 15, 2024 and April 18, 2024, the parties communicated by email regarding scheduling a follow-up meeting, what services would be provided, and Parent's concerns. No such meeting was conducted, however, and services were determined without Parent's agreement or accurately reflecting the items that had been agreed.

40. On April 22, 2024 Parent filed for due process with the Administrative Hearing Commission claiming IEP had been finalized without finishing the meeting and also claiming the IEP document did not accurately reflect the IEP meeting or accurately reflect E.G.'s abilities. Parent asked for changes to the document to reflect the program meeting. On May 5, 2024, Parent amended her due process petition to add additional facts.

41. On July 22 and 23, and September 4-6, 2024, the Missouri Administrative Hearing Commission (AHC) held a hearing on the petition. The issues to be decided included whether the District:

a. Failed to allow Parent to participate in developing the CSP and educational decision making;

b. Failed to devise an appropriate CSP based on Student's individual needs, including goals;

c. Failed to provide special education and related services in accordance with the CSP and in conformity with the Republic IEP while at Fremont;

d. Failed to maintain proper records;

e. Failed to provide records when request by Parent prior to IEP and resolution meetings;

f. Failed to provide the correct amount of special-education minutes in accordance with the CSP at Hickory Hills;

g. Failed to provide special education at Hickory Hills in accordance with the CSP and the Republic IEP;

h. Failed to include Student's educational needs in the PLAAFP;

i. Failed to assess Student's academic and functional needs;

j. Failed to accurately assess Student's academic abilities;

k. Failed to develop annual goals based on Student's needs;

l. Failed to write goals that are specific, timely, complete, appropriate, and measurable;

m. Failed to give notice of rights through Prior Written Notice; and

n. Predetermined placement and services before the IEP meeting.

42. On October 7, 2024, the Missouri Administrative Hearing Commission issued a decision denying relief to Plaintiff.

43. Plaintiff disputes the Commission's decision because the decision was not supported by the evidence and is inconsistent with the IDEA and Missouri law in the following respects, without limitation:

   a. The decision is deficient in that it mischaracterizes evidence, misstates facts in evidence, fails to consider evidence, and fails to address obvious evidentiary weaknesses in District's case.

   b. The decision erred in refusing to rule on issues presented in the due process petition and post hearing briefing. For example, the Commission disregarded Parent's argument and facts in evidence that District failed to provide Student any specialized instruction resulting in a denial of FAPE.

   c. The decision erred in determining that the District did not commit a procedural violations of the IDEA. For example, the AHC determined District's failure to provide Prior Written Notice for denial of a request for additional minutes in the

Take Flight Program did not constitute error.

d. The Commission erred in determining that District's failure to provide records requested by Parents did not violate their obligation to provide such records under the IDEA nor did it undermine their ability to be meaningful participants.

e. The Commission erred in determining the District's actions did not constitute predetermination.

f. The decision relied upon facts not in evidence.

g. The decision erred in determining that the goals and services in Student's IEP were adequate.

h. The decision errored in determining the District was not required to assess for Occupational Therapy needs.

i. The Commission also erred in determining that the District provided all requested records in a timely manner and/or before each IEP meeting.

j. The Commission erred in determining that despite the District's intent to utilize the Take Flight program without fidelity, their proposal was appropriate.

k. The decision is deficient in denying reimbursement to Parents.

l. The decision is deficient in failing to issue an order to compel the District to provide compensatory minutes the AHC

acknowledged were due and owing.

44. This timely appeal for *de novo* review follows.

---

15 of 18

Case 6:24-cv-03322-MDH   Document 1   Filed 11/21/24   Page 15 of 20

## COUNT I

*Failure to Provide Free Appropriate Public Education*

(Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq.)

45. Plaintiff incorporates and realleges all the foregoing paragraphs in this count.

46. E.G. is a child with a disability as defined by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401(3)(A).

47. The District is a Local Educational Agencies (LEA) as defined by the IDEA, 20 U.S.C. § 1401(9).

48. Defendant failed to provide E.G. with a free appropriate public education in violation of the IDEA. Defendant failed to draft and implement an IEP to provide child FAPE in all areas of need.

49. Defendant failed to provide E.G. with special education and supplementary aids and services, based on peer-reviewed research to the extent practicable, in violation of 34 C.F.R. § 300.320(a)(4).

50. Defendant failed to provide measurable annual goals designed to meet E.G.'s needs and enable him to make progress appropriate in light of his circumstances in the general education curriculum, in violation of 34 C.F.R. § 300.320(a)(2)(i).

51. Defendant denied FAPE by writing an IEP that failed to provide services for all areas of need pursuant to 34 C.F.R. § 300.320. Defendant also

denied FAPE by failing to provide the services outlined in the IEP.

52. Defendant denied E.G. FAPE when they failed to follow the parental safeguards to enable Parents to meaningfully participate by predetermining services and failed to consider parental input.

53. Parents made Defendant aware of their concerns on multiple occasions.

54. As the legal and factual result of Defendant's various failures, Plaintiff is damaged and pray for economic, equitable, and compensatory damages, equitable findings, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests the following relief from the Court:

1. A Decision and Order finding that Defendant failed to provide E.G. with a free appropriate public education;

2. A Decision and Order finding that Defendant failed to develop an appropriate individualized education plan for E.G.;

3. A Decision and Order finding that Defendant acted in bad faith and/or gross misjudgment in violating E.G.'s right to FAPE, and that the Dyslexia Center is an appropriate placement for E.G. and tuition and expenses should be borne and reimbursed by Defendant;

4. Judgment in favor of Plaintiff for damages including, but not limited to, private placement expenses and evaluation expenses incurred as a

result of the denial of FAPE;

5. Injunctive relief requiring Defendant to provide compensatory education to E.G. for time spent in interventions that were not designed to meet his needs and wasted valuable educational time and prospective specialized educational services specifically tailored to meet E.G.'s individualized needs, including travel or related expenses;

6. Injunctive relief requiring Defendant to make up for all wrongfully lost services and return student to the place he would have been had he received adequate evaluations and evidence-based services for the above-stated violations;

7. For general, special, consequential, economic, non-economic, statutory and exemplary damages'

8. For attorneys' fees and costs;

9. For pre and post-judgment interest; and

10. For all such further relief as the Court deems just and proper.

DATE: November 21, 2023

RESPECTFULLY SUBMITTED,
 /s/Diane Dragan
DIANE DRAGAN (Mo Bar No. 73591)
Dragan Law Firm, LLC.
131 Prospect Ave, Ste A
St. Louis, MO 63122
(314) 788-7323
Diane@Draganlawfirm.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

| **Plaintiff(s):** | **Defendant(s):** |
|---|---|
| First Listed Plaintiff: | First Listed Defendant: |
| G. E. ; | Springfield R-XII ; |
| **County of Residence:** Outside This District | **County of Residence:** Greene County |
| Additional Plaintiff(s): | |
| Ashley Gerald ; | |

**County Where Claim For Relief Arose:** Greene County

| **Plaintiff's Attorney(s):** | **Defendant's Attorney(s):** |
|---|---|
| Diane Dragan (G. E.) | Ransom Ellis ( Springfield R-XII) |
| 131 Prospect Ave. Ste. A | |
| Kirkwood, Missouri 63122 | , Missouri |
| **Phone:** 314-788-7323 | **Phone:** |
| **Fax:** | **Fax:** |
| **Email:** diane@draganlawfirm.com | **Email:** rellis3@eehjfirm.com |

**Basis of Jurisdiction:** 3. Federal Question (U.S. not a party)

**Citizenship of Principal Parties** (Diversity Cases Only)

    **Plaintiff:** N/A

    **Defendant:** N/A

**Origin:** 1. Original Proceeding

**Nature of Suit:** 448 Education (e.g., IDEA)
**Cause of Action:** 20 USC 1415
**Requested in Complaint**
    **Class Action:**  Not filed as a Class Action
    **Monetary Demand (in Thousands):**
    **Jury Demand:**  No
    **Related Cases:**  Is NOT a refiling of a previously dismissed action

**Signature:** Diane Dragan

**Date:** 11/21/24

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.