**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **E.G., by his parent and Next Friend and ASHLEY GERALD,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 6:24-cv-03322-MDH** |
| **SPRINGFIELD R-XII SCHOOL DISTRICT,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Before the Court are Plaintiffs' and Defendant's cross-motions for judgment on the administrative record. (Docs. 33 and 43). Both parties filed suggestions in support (Docs. 39 and 44) and suggestions in opposition (Docs. 40 and 51). Plaintiffs filed a reply. (Doc. 55). The motions are now ripe for review.

**BACKGROUND**

E.G. is a student diagnosed with Dyslexia and ADHD. Under the Individuals with Disabilities Education Act ("IDEA"), an Individualized Education Program ("IEP") was finalized for E.G. on March 7, 2023 while at the Republic R-3 School District, and subsequently revised on November 3, 2023 ("Republic IEP").

E.G. transferred to the Springfield R-XII School District ("District") on January 24, 2024, halfway through fourth grade. The District assigned E.G. to Fremont Elementary School. On January 30, 2024, the District created a comparable services plan ("CSP") for E.G. that mirrored the minutes for special education and the accommodations from the Republic IEP.

On March 26, 2024, E.G. transferred from Fremont to Hickory Hills Elementary School, also in Springfield R-XII School District. Reviewing E.G.'s special education class performance

at Fremont, the District found that E.G.'s special education teacher had collected incomplete and inaccurate data for his areas of need. As compensation, the District offered 1,848 compensatory service minutes, the entirety of E.G.'s special education minutes while at Fremont.

The District and E.G.'s parent, Ashley Gerald ("Parent") met on April 4 and April 11, 2026 to set up E.G.'s IEP. They discussed a "Level Q" oral-reading exercise that showed E.G. performing at grade level. The exercise's recording form was kept by E.G.'s general education teacher at Hickory Hills, and contained personal notes and shorthand related to her observations about E.G.'s performance. When Parent requested a copy of the recording form, the teacher recreated a "clean copy" of the form with her notes removed. Apparently the original form was lost or destroyed.

During the April 4 and 11 meetings, Parent and the District disputed how many minutes of "Take Flight"—a reading program for students with unexplained reading difficulties—should be included in E.G.'s IEP. The District proposed that E.G. receive two sessions of Take Flight each week, while Parent requested a third day per week. Parent also noticed during the April 11 meeting that E.G. was being shorted thirty minutes per day in specialized instruction based on what his CSP prescribed. The District agreed to address this error and provided Parent with a new offer of compensatory education that covered not only the deficiencies at Fremont but also this newly discovered deficiency. The proposal included 3,420 minutes of compensatory services in the areas of basic reading and writing to be provided at the Springfield Dyslexia Center, as well as extended school year ("ESY") services to be provided that summer. After the April 11 meeting, the District decided to finalize the IEP and amend it at later times as necessary to respond to Parent's concerns. The IEP was scheduled to go into effect on April 22, 2024. Parent filed her due process complaint on April 22.

On May 28, 2024, the District emailed Parent a letter requesting permission to begin implementing, during the pendency of the litigation, the compensatory minutes and ESY services it offered and incorporated into the April 22, 2024 IEP. Parent did not respond to the District's email, and E.G. has still not received those services.

Earlier that same day, there had been a prehearing conference at which, according to Plaintiff, the District's counsel conditioned the 1,848 compensatory minutes from E.G.'s time at Fremont on Parent waiving her due process claim as to E.G.'s time at Fremont. By contrast, the letter sent later that day did not expressly condition Parent's acceptance on a waiver of her claims. Over the summer of 2024, Parent enrolled E.G. in private Take Flight instruction at the Springfield Dyslexia Center—Parent alleges that part of her motivation for so doing was the District's alleged conditioning of compensatory minutes and ESY services. Parent spent $1,330 over the summer of 2024 on that instruction and has continued to pay for private instruction at the Springfield Center.

During the administrative hearing, Ms. Rowland, E.G.'s special education teacher at Hickory Hills, testified that she did not have any specialized curriculum for students with Dyslexia and that she did not begin working with E.G. on the goals in his CSP until after April 22, 2024, when litigation commenced. At the end of the school year in Spring 2024, E.G. took Galileo and MAP assessments—tests which measure a student's math and English skills—that showed him performing around grade level. However, during the summer of 2024, E.G. underwent evaluations at the Springfield Center that showed him performing below grade level with respect to written and verbal skills.

## PROCEDURAL HISTORY

Parent filed a due process Complaint on April 22, 2024 and an amended due process Complaint on May 16, 2024. Parent raised fourteen issues in her amended Complaint. An

administrative hearing was held during the summer of 2024. On the second day, Parent requested a continuance in order to obtain counsel. The hearing was adjourned after the second day, and Plaintiff has thereafter been represented by counsel. The Administrative Hearing Commissioner issued her Decision on October 2, 2024, finding for the District on all issues.

On review before this Court, Parent has reemphasized five issues: (1) whether there was a lack of specially designed instruction at Fremont and Hickory Hills; (2) whether the District predetermined to include only two days of Take Flight per week in E.G.'s IEP; (3) whether the District conditioned compensatory education and ESY services on a waiver of Parent's due process rights; (4) whether the Level Q running record was an education record; and (5) whether the April 22 IEP provided E.G. with a free, accessible public education. This, of course, presents an organization of issues different than how the issues were presented in Parent's *pro se* amended Complaint. The District, in its motion for judgment on the administrative record, has requested that the Court adopt the Commissioner's findings and conclusions in full.

Parent has requested several categories of relief: reimbursement for private Take Flight services, including $1,330 spent over the summer of 2024; compensatory education services consisting of at least 3,420 minutes of Take Flight instruction to remedy the District's failures at Fremont and Hickory Hills from January 24, 2024 through April 22, 2024; extended school year services equivalent to the ESY instruction the District promised to E.G. and incorporated in the April 22 IEP; and an occupational therapy evaluation for E.G. to assess alleged difficulties with fine motor skills.

## STANDARD

The IDEA permits parties to seek review of an administrative decision by bringing a civil action in federal court. 20 U.S.C. § 1415(i)(2)(A). The district court must independently determine

whether the child has received a free, accessible public education ("FAPE"), giving "due weight" to the administrative proceedings. *CJN v. Minneapolis Pub. Sch.*, 323 F.3d 630, 636 (8th Cir. 2003). The burden of persuasion is on the party seeking relief. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005).

This review has a substantive prong and a procedural prong. The IDEA "guarantees a substantively adequate program of education to all eligible children." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 394 (2017). "[T]his requirement is satisfied, and a child has received FAPE, if the child's IEP … is 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* (citation omitted). "For children receiving instruction in the regular classroom, this would generally require an IEP 'reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.'" *Id.* (citation omitted). However, the IEP must be appropriate in light of the child's circumstances; it must be "*specially* designed to meet a child's *unique* needs through an [*i*]*ndividualized* education program." *Id.* at 400 (quotations omitted) (emphasis in original).

In designing an IEP tailored to meet a disabled child's unique needs, the school district must follow the procedures set forth in the IDEA. *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1026–27 (8th Cir. 2003). However, not every procedural inadequacy is a violation of the IDEA. "An IEP should be set aside only if procedural inadequacies [1] compromised the pupil's right to an appropriate education, [2] seriously hampered the parents' opportunity to participate in the formulation process, or [3] caused a deprivation of educational benefits." *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996) (internal quotations omitted). Still, neither are the IDEA's procedural safeguards a "checklist": they inform the IDEA's substantive guarantee of FAPE. *Endrew F.*, 580 U.S. at 401–02 ("[T]he procedures are there for a reason, and their focus provides

insight into what it means, for purposes of the FAPE definition, to 'meet the unique needs' of a child with disability.") (citation omitted).

Under the IDEA, the Court may "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2). "[R]eimbursement for private educational services, to which a student is entitled under the IDEA and which should have been borne by a school district, is a form of relief available under the IDEA." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594 (8th Cir. 2013).

**DISCUSSION**

The Court will discuss the five issues Parent has raised on review. As for the issues from Parent's amended Complaint that Parent has not raised on review, the Court, giving due weight to the Commissioner's assessment, agrees that those issues did not result in violations of the IDEA.

As a preliminary matter, the Court addresses one of Parent's requested forms of relief: that the District provide E.G. with an occupational therapy evaluation. Parent has not briefed this issue on review before the Court.

As the Commissioner noted in her Decision, Parent has not provided evidence that occupational therapy is necessary to provide a free, accessible public education to a student with Dyslexia such as E.G. There was therefore no violation of the IDEA on this ground.[1]

[1] In her amended Complaint, Parent also requested compensation for the mileage costs for transporting E.G. to the Springfield Dyslexia Center. The IDEA does not "furnish[] clear notice regarding [] liability" for costs of transportation that are not included in a student's IEP. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006); *see also Osseo Area Schools, Independent Sch. Dist. Number 279 v. M.N.B. ex rel. J.B.*, 970 F.3d 917, 922 (8th Cir. 2020) (explaining that parent was not entitled to reimbursement for student's transportation to school in another district where such reimbursement was not mentioned in student's IEP). Although not raised by Parent before this Court, to the extent Parent still seeks reimbursement for transportation costs, the Court declines to order such relief.

**1. Instruction at Hickory Hills.**

Parent contends that E.G. did not receive a free, accessible public education during the time he was at Hickory Hills before the creation of the April 22 IEP.

The IDEA's core substantive obligation is the provision of specially designed instruction. 20 U.S.C. § 1401(29). This means "adapting, as appropriate to the needs of an eligible child … the content, methodology, or delivery of instruction to address the unique needs of the child." 34 C.F.R. § 300.39(b)(3).

Parent points out that Ms. Rowland—E.G.'s special education teacher at Hickory Hills—testified that she had no reading curriculum for students with dyslexia, no phonics program, no spelling curriculum, and no writing curriculum for students with learning disabilities. Moreover, Ms. Rowland testified that she did not know when she began working with E.G. on the goals laid out in his comparable service plan but believed it was some time *after* the "stay put" was in place—that is, not until sometime after April 22, when litigation commenced.

The District contends that, because insufficiencies in Ms. Rowland's special education classroom were not specifically an issue addressed by the Commissioner, the issue cannot be reviewed by this Court. However, Ms. Rowland's classroom deficiencies were the substance of an issue raised below: whether E.G. received special education services in conformity with his CSP at Hickory Hills. (*See* Doc. 60-2, at 117).

The Court finds this amounted to a denial of free, accessible public education. E.G. should be compensated for the entire pre-April 22 allocated specialized education time at Hickory Hills, and Parent's enrollment of E.G. in private tuition at the Springfield Center over the summer of 2024 was a reasonable remedial method. Accordingly, Parent is entitled to $1,330 in compensation for private tuition at the Springfield Center over the summer of 2024.

**2. Individualized evaluation.**

Parent contends that the District committed a procedural violation of the IDEA by predetermining to provide for two sessions of Take Flight per week instead of first discussing with Parent and conducting an individualized evaluation.

The IDEA requires that parents be afforded a meaningful opportunity to participate in IEP development. 20 U.S.C. § 1414(d)(1)(B). A district violates this requirement when it decides, before an IEP meeting, what services a student will receive. *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 857–58 (6th Cir. 2004).

At the April 4 and 11 meetings, Parent advocated for three sessions of Take Flight per week. The record suggests that even before conferring with Parent, the District believed two sessions per week was enough. Nonetheless, as the District notes, the District incorporated many of Parent's other suggestions during the April 4 and 11 meetings.

A District is not required to accommodate a Parent's recommendation, so long as the District considers it. *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1188 (11th Cir. 2014) (explaining that evidence that a District might possibly be swayed by parents' opinions defeats a claim of predetermination). The Court finds that Parent has not established, despite the District's firm preference for two sessions per week, that Parent's view enjoyed no consideration. There was no procedural violation of the IDEA in regard to predetermination.

**3. Conditional services.**

Parent contends that the District conditioned service of compensatory minutes and ESY services on Parent relinquishing aspects of her due process claim. Parent notes that the right to a due process hearing is a fundamental statutory protection under 20 U.S.C. § 1415(f).

On May 28, 2024, the District emailed Parent a request to allow it to implement Student's compensatory minutes and ESY during the pendency of this litigation. The letter contained no conditional language, and the Commissioner found that the letter was an unconditional offer that Parent declined. Parent contends that the Commissioner ignored the prehearing conference transcript, which records District's counsel conditioning E.G.'s access to compensatory minutes from his time at Fremont on Parent giving up her due process claims as to Fremont.

The Court finds Parent has failed to establish that any conditioning of compensatory minutes and ESY services constitutes an unremedied denial of free, accessible public education. Under the April 22 IEP, E.G. will receive the 3,420 compensatory minutes and ESY services that Parent believes were improperly conditioned. Moreover, this Order already provides Parent compensation for E.G.'s tuition at the Springfield Center over the summer of 2024. Further relief would be duplicative.

**4. Was the "running record" an education record.**

Parent contends that the District violated the IDEA by failing to provide a copy of the running record for the Level Q assessment relied on in forming the April 22 IEP.

The failure to produce an "education record" constitutes a procedural violation of a parent's right to access records under the IDEA. 34 C.F.R. § 300.613. The Federal Education Rights and Privacy Act definition incorporated in the IDEA defines "education records" as records "maintained by an educational agency or institution" that contain information "directly related to a student." 34 C.F.R. § 99.3(a)(1)–(2).

The Level Q assessment, as an educational record containing notes about E.G.'s performance, is indeed an "educational record" under the IDEA's definition, and the failure to provide a version of this record, with the teacher's notes included, violated the IDEA's procedure.

However, "[a]n IEP should be set aside only if procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." *Indep. Sch. Dist. No. 283*, 88 F.3d at 562. The Level Q running record was one record among many. Without a combination of additional procedural violations, the failure to produce one record will not amount to a procedural denial of free, accessible public education.

**5. The April 22 IEP.**

Parent further suggests that the April 22 IEP was not reasonably calculated to enable E.G. to receive free, accessible public education for three reasons. First, Parent contends that the IEP lacked baseline data for E.G. in several subjects. The IDEA requires IEPs to contain "measurable annual goals," 34 C.F.R. § 300.320(a)(2)(i). According to Parent, the April 22 IEP could not have had measurable goals where it lacked baselines.

Baselines are not required in an IEP. *Lathrop R-II Sch. Dist. v. Gray*, 611 F.3d 419, 424 (8th Cir. 2010). The Court declines to find a procedural violation on this ground.

Second, the April 22 IEP reduced E.G.'s written expression services from 150 minutes to twenty minutes per week. Parent contends this reduction in written expression services demonstrates that the April 22 IEP was not reasonably calculated to address E.G.'s needs.

The District counters that E.G. had made appropriate overall progress on his goals during his first semester at Fremont and Hickory Hills and that the April 22 IEP was appropriately designed to build on that progress. It cites E.G.'s scores on Galileo and MAP exams at the end of his fourth-grade year. In E.G.'s fourth grade MAP exam, his Reading Scale score was up 74 points; his ELA Research Scale score was up 29 points; his ELA Writing Scale score was up 42 points; and his ELA Listening Scale score was up 18 points. (Doc. 51, at 38).

Parent claims that the Galileo and MAP exams were administered *after* E.G. began private enrollment at the Springfield Center, and "MAP scores that improved during a period of intensive private intervention cannot be attributed to the District's instruction." (Doc. 44, at 18). This argument lacks some factual support. E.G. enrolled in private courses at the Springfield Center during the summer of 2024, but the MAP exam was administered at the end of Spring 2024. As it appears to the Court, E.G.'s progress in his MAP and Galileo exams was separate from his studies at the Springfield Center. The Court is unable to find a denial of free, accessible public education where the District's exams—administered to all students—showed E.G. making grade-level progress.

Third, Parent notes that contemporaneous assessments by evaluators at the Springfield Center over the summer of 2024 indicated generally that E.G. was at a lower level than the District represented. A "GORT" exam placed E.G. at a second-grade reading level, in the bottom 10% nationally for a student entering fifth grade. A "TOWL-4" exam placed his written communication at two standard deviations below average. E.G.'s "Fountas" and "Pinnell" assessments placed him at level "O" instead of the expected level "S". An Enrichment Alternatives evaluation found he did not understand multiple-meaning words—a goal the District claimed he had nearly mastered.

As with the issue of reduction in E.G.'s written expression minutes, the Court finds that the exams E.G. underwent at the Springfield Center do not outweigh his around-grade-level performances on the District's MAP and Galileo assessments. Accordingly, Parent has failed to establish that E.G.'s April 22 IEP was not "reasonably calculated to enable [him] to receive educational benefits." *Endrew F.*, 580 U.S. at 394. The Court finds that the April 22 IEP did not deny E.G. a free, accessible public education.

## CONCLUSION

For the foregoing reasons, Plaintiff's and Defendant's motions for judgment on the administrative record are **GRANTED IN PART AND DENIED IN PART**. The Decision of the Administrative Hearing Commissioner is upheld, except as to the Commissioner's conclusion that E.G. received a free, accessible public education under the CSP while at Hickory Hills. It is **ORDERED** that the District compensate Parent in the amount of $1,330 for the costs incurred because of that denial of FAPE. It is **FURTHER ORDERED** that the District implement an updated IEP for E.G. that provides for the 3,420 compensatory minutes and ESY services it incorporated into the April 22 IEP and acknowledged E.G. was owed.

**IT IS SO ORDERED**.

DATED: November 3, 2026

*/s/ Douglas Harpool*

**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**